UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TAMMY CAGLE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) |
| | ) Civil Action No. 3:18-cv-10123-KAR |
| | ) |
| THOMAS ESTES & BEHAVIORAL HEALTH | ) |
| NETWORK, INC. | ) |
| | ) |
|     Defendants. | ) |

MEMORANDUM OF DECISION AND ORDER REGARDING DEFENDANT
BEHAVIORAL HEALTH NETWORK'S MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM
(Dkt. No. 10)

ROBERTSON, U.S.M.J.

I. INTRODUCTION

Plaintiff Tammy Cagle ("Plaintiff") alleges that Thomas Estes ("Estes") and Behavioral Health Network ("BHN") created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and Mass. Gen. Laws ch. 151B ("Chapter 151B"). BHN has moved to dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff has failed to state a claim upon which relief can be granted. The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. For the reasons that follow, BHN's motion to dismiss is DENIED.

II. BACKGROUND

A. Facts

To evaluate a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom

1

in the pleader's favor." *A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)). The complaint's factual allegations are recited according to this standard.[1]

Plaintiff's complaint is based on the alleged conditions of her employment as a specialty court clinician assigned to the drug court session that was established in the Pittsfield Division of the District Court Department of the Massachusetts Trial Court ("drug court") (Dkt. No. 1 ¶¶ 22, 28, 32). Drug courts are "diversionary courts" that were established to reduce recidivism by defendants with substance abuse challenges by providing them "with increased access and linkage to treatment and community resources" (*id.* ¶ 8). Drug courts employ a team approach to accomplish their goals (*id.* ¶ 9). The presiding judge leads the team, which normally includes a specialty court clinician in addition to a probation officer, drug court coordinator, clerk, prosecutor, defense attorney, treatment provider, and law enforcement representative (*id.* ¶¶ 9, 10, 14). The judge assembles regular staff meetings during which the team reviews drug court participants' progress and needs (*id.* ¶ 13). The drug court judge, in collaboration with the team members, "decides whether a particular criminal defendant is eligible to participate in drug court, crafts treatment plans for drug court defendants, and makes the ultimate decisions in drug court cases, including the imposition of incentives or sanctions" (*id.* ¶ 12).

---

[1] The facts are taken from the complaint, Dkt. No. 1. BHN submitted the affidavit of Juliana Reiss, Psy.D., in support of its motion to dismiss (Dkt. No. 11-1). Plaintiff asked the court to strike the affidavit (Dkt. No. 20 at 1). A court addressing a Rule 12(b)(c) motion is permitted to consider "documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiffs' claim; or . . . documents sufficiently referred to in the complaint" without converting the motion into one for summary judgment. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Because Reiss' affidavit does not fit within any of these categories, the court disregards it and has not accepted or addressed BHN's arguments to the extent its arguments are based on the affidavit.

During staff meetings, the specialty court clinician recommends "appropriate treatment options to the judge" and "inform[s] the drug court team on clinical perspectives" (*id.* ¶ 21). The Trial Court Department had an interagency service agreement with the Department of Mental Health ("DMH") to place clinical professionals in the specialty courts (*id.* ¶ 16). The specialty court clinicians worked through the DMH Court Clinic system and were paid through a grant funded by DMH and the Trial Court Department (*id.* ¶¶ 15, 20).

The Pittsfield District Court received funding to establish a drug court in 2016 (*id.* ¶ 22). Estes, who was the First Justice of the Eastern Hampshire Division of the District Court Department of the Trial Court in Belchertown, was appointed as the presiding justice of the Pittsfield drug court (*id.* ¶ 23, 24). As the presiding justice and the Pittsfield drug court team's leader, Estes oversaw the drug court's development, presided over the sessions when the court opened, established work schedules, and set the dates, times, places, and agendas for the drug court team's meetings (*id.* ¶¶ 24, 33, 34). He worked one day a week in Pittsfield, where he shared a lobby with another judge who was assigned to Pittsfield, and retained his position as the First Justice of the Eastern Hampshire District Court along with his chambers in Belchertown (*id.* ¶¶ 24, 25, 26).

DMH subcontracted with BHN to provide a specialty court clinician to the Pittsfield drug court (*id.* ¶¶ 17, 18). Plaintiff, who was a licensed social worker, applied to BHN for the position of specialty court clinician for the court (*id.* ¶ 27). On June 24, 2016, Dr. Welli Yeh, the program director of BHN's adult court clinics, notified Plaintiff that she was authorized to hire Plaintiff as a specialty court clinician subject to Estes' approval (*id.* ¶¶ 19, 28). In July 2016, Estes approved Plaintiff's hire after he met her and Dr. Yeh in his Belchertown chambers (*id.* ¶ 29, 30). Plaintiff began working as a member of the drug court team on July 18, 2016 (*id.* ¶¶ 31,

32). Her office was in the Pittsfield District Court (*id.* ¶ 35). Estes was Plaintiff's sole supervisor in the drug court from July 2016 through November 2016 (*id.* ¶ 42). From December 2016 through March 2017, he was her only "consistent" supervisor (*id.*).

In approximately August 2016, Estes told Plaintiff that if she "'needed anything'" or wished to "'vent,'" she could speak to him in his Belchertown chambers (*id.* ¶ 36). Thereafter, he directed her to meet with him alone at that location (*id.* ¶ 37). Plaintiff alleges, upon information and belief, that she was the only drug court team member who met privately with Estes in his Belchertown chambers (*id.* ¶ 38). During these meetings, Estes "offered [Plaintiff] a sympathetic ear" regarding her attempts to get the probation department to accept best practices for the drug court and he expressed his satisfaction with their meetings (*id.* ¶¶ 39, 40). He voiced disappointment when they missed a meeting (*id.* ¶ 40).

The Pittsfield drug court opened in October 2016 (*id.* ¶ 41). The weekly court sessions were usually held on Thursday mornings (*id.*).

On or about November 16, 2016, Plaintiff, Estes, and other members of the Pittsfield drug court team attended a two-day conference (*id.* ¶ 46). Estes, Plaintiff, and other team members drank alcohol during the cocktail hour after the first day of the conference (*id.* ¶ 47). They continued drinking during dinner at the hotel restaurant (*id.* ¶ 48). After dinner, Estes and Plaintiff remained at the table while other members of the team retired to the hotel bar (*id.* ¶ 49). Before Estes and Plaintiff joined the other team members at the bar, Estes "began looking at Plaintiff suggestively and suddenly reached out and began rubbing her arm. He told her that she was 'adorable' and 'attractive'" (*id.* ¶¶ 51, 52). Plaintiff dismissed his overtures (*id.* ¶ 52).

After Estes and Plaintiff retired to their respective hotel rooms, Plaintiff sent Estes a text message asking for his assistance with her television remote control (*id.* ¶¶ 53-59). Estes came

4

to her room and fixed the television (*id.* ¶ 60). He then "sat on the bed, crossed his legs, closed his eyes, and appeared to be falling asleep" (*id.* ¶ 61). Plaintiff, who was wearing a t-shirt and sweatpants, lay on the bed and watched television (*id.* ¶ 62). Estes suddenly stood up, began undressing, reclined next to Plaintiff on the bed, kissed her, pulled down his boxer shorts, and forced Plaintiff to fellate him (*id.* ¶¶ 63-66). After he was satisfied, he dressed and told Plaintiff that he had to go to his room (*id.* ¶ 68).

Plaintiff left the conference early the next day "because she felt uncomfortable, ashamed, and confused" about the events that had transpired with Estes in her hotel room on the previous night (*id.* ¶ 69). Estes called her on November 18 to discuss what had occurred (*id.* ¶ 70). Both parties acknowledged that alcohol had fueled their sexual encounter (*id.* ¶ 71). They agreed not to engage in sexual acts again (*id.*). Plaintiff expressed her desire to maintain a professional working relationship (*id.* ¶ 72). Estes allegedly responded that their working relationship had changed, and, if anyone found out about their sexual encounter, "'it would be worse for . . . Plaintiff' in drug court" (*id.* ¶¶ 73, 74). He told Plaintiff that she would "'lose credibility'" with the probation officers if they learned of their tryst (*id.* ¶ 74).

Approximately a week later, Estes invited Plaintiff to Belchertown to discuss the drug court (*id.* ¶ 75). Plaintiff traveled from her office in Pittsfield to Belchertown and met with Estes in his chambers during court hours (*id.* ¶ 76). After discussing the drug court, Estes "suddenly" closed the window blinds, shut and locked the door, and told Plaintiff that "he wanted to continue what they had started" at the conference (*id.* ¶¶ 78, 79). Plaintiff alleges that Estes initiated frequent sexual encounters with her, principally in his Belchertown chambers, through March 2017 (*id.* ¶¶ 89, 92, 93, 106, 107, 111, 113, 116-120, 127-131, 135-137).

Plaintiff noticed that Estes acted "coldly" toward her at team meetings and drug court sessions when she told him that she wanted to end their sexual relationship (*id.* ¶ 124). When she obliged his sexual requests, however, he agreed with her opinions and defended her treatment decisions (*id.* ¶ 125).

Plaintiff's clinical supervisor, David DiSessa, met with Plaintiff once a week at a Westfield restaurant to discuss her role as a specialty court clinician and observed one drug court session each month beginning in December 2016 (*id.* ¶ 43). Between October 2016 and March 2017, Juliana Reiss, BHN's Director of Forensics, attended two drug court sessions (*id.* ¶ 44). DiSessa and Reiss praised Plaintiff's job performance on multiple occasions (*id.* ¶ 45).

Plaintiff received a telephone call from Reiss on Friday, March 17, 2017 (*id.* ¶ 139). Reiss told Plaintiff that, as a result of a complaint being filed against her, she was being placed on administrative leave effective immediately and was not permitted to return to the drug court (*id.* ¶ 140). Reiss did not disclose any details of the complaint, including its source (*id.* ¶ 140). Plaintiff immediately sent Estes a text message (*id.* ¶ 142). He denied knowing anything about her administrative leave (*id.*).

On Tuesday, March 21, 2017, Plaintiff met with Reiss and Claudia Muradian-Brubach, BHN's human resources ("HR") director (*id.* ¶ 143). Reiss and Muradian-Brubach told Plaintiff that she was removed permanently from the drug court due to "multiple complaints" about her (*id.* ¶ 144). Notwithstanding Plaintiff's repeated requests, Reiss and Muradian-Brubach did not disclose any information about the complaints against Plaintiff except to say that her removal from the drug court was based on her decision to detain a criminal defendant until a treatment bed was available (*id.* ¶¶ 145, 146). However, Estes, as the presiding judge, made custody

determinations (*id.* ¶ 147). BHN then assigned Plaintiff to another position at a lower salary (*id.* ¶ 148).

Plaintiff's personnel file did not contain any written complaints, written warnings, or written disciplinary actions regarding her position as a specialty court clinician at the drug court (*id.* ¶ 149). In response to DMH's request for Estes' general impression of Plaintiff's work performance on March 16, 2017, Estes indicated that Plaintiff was a "'top-notch clinician'" (*id.* ¶ 150). However, Estes criticized Plaintiff's work performance during his conversation with DiSessa two weeks later, on March 30, 2017 (*id.* ¶ 151). Estes allegedly told DiSessa that the atmosphere in the courtroom had "'completely changed'" since Plaintiff left her position; the tension in the courtroom had disappeared (*id.* ¶ 152). He stated that he had received "'many complaints'" about Plaintiff from the court staff (*id.* ¶ 153). Estes further indicated that Plaintiff had "'no people skills, which was hard for someone who was a clinician'" (*id.* ¶ 154). DiSessa memorialized his conversation with Estes in an e-mail message to Reiss (*id.* ¶ 151). Reiss, in turn, forwarded DiSessa's message to Muradian-Brubach and another BHN HR employee with a note saying that DiSessa had received "'some disturbing information'" about Plaintiff that should be included in her HR file (*id.* ¶ 155).

Plaintiff resigned from BHN on April 18, 2017 and moved to Georgia (*id.* ¶ 158). Estes allegedly "threatened" Plaintiff that "things would be worse for her" if their sexual relationship became public (*id.* ¶ 160).

Plaintiff filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") based on Estes' conduct during the time she worked as a member of the drug court team (*id.* ¶ 167).

    B.    <u>Procedural History</u>

Plaintiff's four count complaint was filed on January 22, 2018 (Dkt. No. 1). In Count I, Plaintiff alleged that Estes violated Title VII by creating a hostile work environment (*id.* ¶¶ 171-174). Count II raised the same claim against BHN (*id.* ¶¶ 175-180). Counts III and IV alleged sex discrimination in violation of Chapter 151B against Estes and BHN, respectively (*id.* ¶¶ 181-190). On June 7, 2018, Plaintiff filed a stipulation of dismissal as to Count I (Dkt. No. 30 at 2-3; Dkt. No. 35). BHN has moved to dismiss both counts against it under Fed. R. Civ. P. 12(b)(6) (Dkt. No. 10). The court heard argument from the parties on August 1, 2018 (Dkt. No. 41).

III. DISCUSSION

A. Standard of Review

"A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint, whether the claim, as alleged, is sufficient 'to state a claim upon which relief can be granted.'" *Millay v. Surry Sch. Dep't*, No. 09-cv-411-B-W, 2009 WL 5184398, at *3 (D. Me. Dec. 22, 2009), *report and recommendation adopted,* No. CV-09-411-B-W, 2010 WL 346718 (D. Me. Jan. 22, 2010) (quoting Fed. R. Civ. P. 12(b)(6)). Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition, the complaint should "contain 'enough facts to state a claim to relief that is plausible on its face.'" *A.G. ex rel. Maddox*, 732 F.3d at 80 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44–45 (1st Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 44 (quoting *Iqbal*, 556 U.S. at 679). "'[T]he complaint should be read as a whole, not parsed piece by piece

8

to determine whether each allegation, in isolation, is plausible.'" *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 14 (1st Cir. 2011) (quoting *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009)).

"The plausibility standard invites a two-step pavane." *Maddox*, 732 F.3d at 80. First, the court "'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). Then "the court must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Morales-Cruz*, 676 F.3d at 224).

### B. Count II: Sex Discrimination/Creation of a Hostile Work Environment in Violation of Title VII

In Count II, Plaintiff alleged that BHN is liable for creating a hostile work environment based on Estes' behavior. Specifically, Plaintiff claimed that "BHN knew or should have known that . . . Estes was creating a hostile work environment for . . . Plaintiff, and failed to investigate, or take any action to correct, [it]" (Dkt. No. 1 ¶ 180). Given that Plaintiff admits that she never reported Estes' conduct to BHN, and the sex acts purportedly occurred in the privacy of Estes' chambers and in Plaintiff's home, BHN argues that it is entitled to dismissal of Count II because the allegations in the complaint are insufficient to establish that BHN knew or should have known of Estes' alleged conduct. Plaintiff acknowledged at the hearing on BHN's motion that the adequacy of the allegations showing BHN's knowledge presents a "close call," but contended that reading the complaint indulgently under the standard applicable to motions to dismiss, the well-pleaded facts, and the reasonable inferences that can be drawn therefrom, sufficiently establish the possibility of BHN's awareness of Estes' and Plaintiff's inappropriate relationship. In the circumstances presented by this case, in which a judge is alleged to have created the

9

hostile work environment, the totality of the complaint's factual allegations are adequate, if barely, to permit Plaintiff discovery containing the identity of the initial complainant(s) and the details of the alleged criticism(s) of her job performance that led BHN to remove her from her position with the drug court on March 17, 2017. *See Ocasio-Hernández,* 640 F.3d at 17 (alteration in original) (quoting *Twombly,* 550 U.S. at 556) ("[T]he requirement of plausibility on a motion to dismiss under Rule 12(b)(6) 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the illegal [conduct].'").

There is no dispute between the parties as to the applicable law. Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). *See McDonnell v. Cisneros*, 84 F.3d 256, 259 (7th Cir. 1996) (citing *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 66–67 (1986)) ("When a female worker is sexually harassed by male coworkers or supervisors, the result is to make the workplace less bearable for her because she is a woman than it is for the men who work beside her and, being male, are not harassed.").

> To prevail on a hostile environment claim arising from gender-based discrimination, a plaintiff must show the following: "(1) that she is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established."

10

*Brissette v. Franklin Cty. Sheriff's Office*, 235 F. Supp. 2d 63, 85 (D. Mass. 2003) (quoting *O'Rourke v. City of Providence,* 235 F.3d 713, 728 (1st Cir. 2001), *citing Faragher v. City of Boca Raton,* 524 U.S. 775, 787–89 (1998)).

BHN claims that Plaintiff's complaint fails to plead sufficient facts to satisfy the sixth element, employer liability. "In order to establish liability under Title VII, plaintiff must present sufficient evidence to show that the discriminatory conduct at issue can be attributable to her employer." *Acosta v. Harbor Holdings & Operations, Inc.,* 674 F. Supp. 2d 351, 370 (D.P.R. 2009). *See Medina v. Adecco*, 561 F. Supp. 2d 162, 176 (D.P.R. 2008) ("Title VII liability attaches only in the event of a covered employment relationship."). Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C. § 2000e(b).

"An employer's liability for a hostile work environment claim depends on the harasser's employment status relative to the victim's . . . ." *Torres-Negrón v. Merck & Co.,* 488 F.3d 34, 40 (1st Cir. 2007). On the facts as alleged, either BHN was Plaintiff's employer and Estes was a non-employee, or Plaintiff was jointly employed by BHN, the Trial Court, and DMH and Estes was her co-worker. *See Rivera-Vega v. ConAgra, Inc.,* 70 F.3d 153, 163 (1st Cir. 1995) (quoting *Holyoke Visiting Nurses Ass'n v. NLRB,* 11 F.3d 302, 306 (1st Cir. 1993)) ("'A joint employer relationship exists where two or more employers exert significant control over the same employees and share or co-determine those matters governing essential terms and conditions of employment.'"). If the hostile work environment was created by an employee's supervisor, an employer is vicariously liable. *Torres-Negrón,* 488 F.3d at 40. On the other hand, if the hostile work environment was created by a non-employee or a co-employee, the employer "will be held

11

liable only if it was negligent either in discovering or remedying the harassment." *Id.* (citing *Crowley v. L.L. Bean, Inc.,* 303 F.3d 387, 401 (1st Cir. 2002); *Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062, 1074 (10th Cir. 1998)). An employer may be found to be negligent if it knew or should have known of the harassment and failed to take corrective action. *See Medina –Rivera v. MVM, Inc.,* 713 F.3d 132, 137 (1st Cir. 2013) ("[B]ecause . . . employers must provide their personnel with a harassment-free workplace, they may be on the hook for a nonemployee's sexually-harassing behavior under certain conditions – one of which being that they knew or should have known about the harassment and yet failed to take prompt steps to stop it."); *Santos v. P.R. Children's Hosp.*, Civil No. 11-1539 (MEL), 2012 WL 4508122, at *5 (D.P.R. Sept. 28, 2012) (citing *Hernández v. Miranda Vélez*, Civ. No. 92-2701(JAF), 1994 WL 394855, at *8 (D.P.R. July 20, 1994), *aff'd,* 132 F.3d 848 (1st Cir. 1998)) (same); *Medina*, 561 F. Supp. 2d at 178 ("To prevail under a theory of joint employer liability, plaintiff must show that defendant knew or should have known of the discriminatory conduct and failed to take prompt corrective measures within its control."); 29 C.F.R. § 1604.11(e) (2018) ("An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action.").

Here, the parties' dispute concerns whether the complaint sufficiently alleges that BHN knew or should have known about the hostile work environment; that is, whether BHN received actual or constructive notice of Estes' sexual harassment of Plaintiff. "In the context of sexual harassment claims, '[a]ctual notice is established by proof that management *knew* of the harassment.'" *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 802 (8th Cir. 2009) (quoting *Watson v. Blue Circle, Inc.,* 324 F.3d 1252, 1259 (11th Cir. 2003)). "'[A]ctual notice is

such notice as is positively proved to have been given to a party directly and personally, *or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry.*'" *Id.* (quoting *Actual Notice*, BLACK'S LAW DICTIONARY (6th ed.1990)). *See Zimmerman v. Cook Cty. Sheriff's Dept.,* 96 F.3d 1017, 1019 (7th Cir. 1996) ("In a case such as this in which pervasive harassment is not charged, the employer's duty to investigate and if appropriate take remedial measures is not activated until the employee complains of sexual harassment or information about the harassment comes to the employer's attention from some other quarter."); *Fisher v. Town of Orange*, 885 F. Supp. 2d 468, 476 (D. Mass. 2012) (citing *Crowley*, 303 F.3d at 402) ("[T]he law does not require that plaintiff herself brought her co-worker's alleged misconduct to the attention of [a] supervisor, as long as a supervisor was on notice of it."). "[T]here can be constructive notice in two situations: where an employee provides management level personnel with enough information to raise a probability of sexual harassment in the mind of a reasonable employer, or where the harassment is so pervasive and open that a reasonable employer would have had to be aware of it." *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 294 (3d Cir. 1999) (citing *Zimmerman,* 96 F.3d at 1018–19). Plaintiff does not allege pervasive and open harassment. Moreover, given her offsite assignment, it would be unreasonable to infer that BHN "should have been aware" of Estes' alleged conduct. Plaintiff does not advance this contention.

"Because precise knowledge of the chain of events leading to the [Title VII] violation [are] unavailable to . . . [P]laintiff at this early stage of the litigation, [the court] take[s] to heart the Supreme Court's call to 'draw on . . . "judicial experience and common sense" as [it] make[s] a contextual judgment about the sufficiency of the pleadings.'" *Ocasio-Hernández,* 640 F.3d at 16 (citing *Sanchez v. Pereira-Castillo*, 590 F. 3d 31, 50 (1st Cir. 2009)). When the facts alleged

in the complaint are viewed in the light most favorable to Plaintiff, and any ambiguities are resolved in her favor, *see id.*, 640 F. 3d at 17, the pleading plausibly raises the possibility that BHN knew or should have known of the sexual harassment.[2]

DiSessa, Plaintiff's clinical supervisor, and Reiss, BHN's Director of Forensics, attended drug court sessions and purportedly complimented Plaintiff's job performance several times (*id.* ¶¶ 43- 45). On March 16, 2018, Estes allegedly told DMH that Plaintiff was a "'top notch clinician'" (*id.* ¶ 150). Yet, the next day, Friday, March 17, 2017, Reiss placed Plaintiff on administrative leave based on a "complaint" (*id.* ¶¶ 139, 140). Reiss refused to disclose the identity of the complainant or any details of the alleged complaint (*id.* ¶ 140). At that time, there were no written complaints, warnings, or disciplinary actions in Plaintiff's personnel file regarding her performance as a specialty court clinician (Dkt. No. 1 ¶ 149).

Plaintiff alleges that when she met with Reiss and Muradian-Brubach, BHN's HR director, on the following Tuesday, March 21, 2017, they informed her that she was removed permanently from the drug court based on "multiple complaints," which they refused to describe (*id.* ¶¶ 143-145). They allegedly informed Plaintiff that she was being terminated as a specialty court clinician because she had incarcerated a criminal defendant while he awaited the availability of a treatment bed instead of releasing him into the community (*id.* ¶ 146). However, Plaintiff alleges that Estes, as the presiding judge, made the final determinations as to incentives or sanctions for drug court participants, including decisions about custody versus release (*id.* ¶¶ 12, 147). Thus, it may be inferred that BHN's stated excuse for Plaintiff's removal from the drug court was not the real reason, or the whole reason, for ending that assignment.

---

[2] The court's analysis ignores the complaint's legal conclusion that "BHN knew or should have known that . . . Estes was creating a hostile work environment for the Plaintiff . . ." (Dkt. No. 1 ¶ 180). *See Iqbal*, 556 U.S. at 678.

The inference that Plaintiff asks the court to draw is that BHN was notified by a stakeholder in the drug court that Plaintiff's relationship with Estes was inappropriate. *See Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010). ("A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ."); *Zimmerman*, 96 F.3d at 1019 (a third person can be the source of the employer's knowledge). Although the complaint alleges that Plaintiff's and Estes' sexual conduct occurred in private, it alleges sufficient facts from which it can be reasonably inferred that others could have been aware of their inappropriate relationship. Members of the court staff allegedly knew of Plaintiff's multiple visits to Estes' Belchertown chambers (Dkt. No. 1 ¶¶ 92, 96, 109, 111). Plaintiff claims that she was concerned that other members of the drug court team were aware of the sexual relationship based on the fluctuations in Estes' treatment of her at team meetings and during court sessions (*id.* ¶¶ 122-125). Further, although Plaintiff and members of the probation department allegedly disagreed about the best practices for the drug court, Plaintiff claims that the probation officers were "always kinder" toward her in the drug court sessions immediately following her visits to Estes' chambers in Belchertown (*id.* ¶¶ 39, 84, 112). The inference that someone reported the inappropriate relationship to BHN is also supported by the fact that BHN removed Plaintiff from the drug court notwithstanding Reiss' and DiSessa's compliments on her job performance and the absence of any negative evaluations in her personnel file (*id.* ¶¶ 45, 149). *See Ocasio-Hernández,* 640 F.3d at 18 n.6 ("The lack of any plausible alternative justification for the plaintiffs' terminations makes the inference of . . . discrimination from the facts alleged more reasonable."). Given Estes' position and authority as a judge and leader of the drug court, a possible report to BHN that there was an inappropriate relationship would have "triggered [BHN's] duty to investigate" whether sexual harassment had occurred. *Medina-Rivera*, 713 F.3d

15

at 138.  *See Cotto v. Gen. Accident Ins. Co. of P.R., Ltd.*, 975 F. Supp. 410, 415 (D.P.R. 1997) (supervisor had a duty to exercise reasonable care to discover sexual harassment).

"In evaluating the sufficiency of the complaint, [the court's] inquiry focuses 'on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint.'"  *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 102 (1st Cir. 2013) (quoting *Ocasio–Hernández,* 640 F.3d at 13).  The complaint pleads abundant facts establishing that Estes created a hostile work environment.  *See Brissette*, 235 F. Supp. 2d at 85.  The inference that BHN knew or should have known about the hostile work environment crosses the plausibility threshold because it is grounded in the factual allegations stated in the complaint.  *See Ocasio-Hernández*, 640 F. 3d at 15-16.  It is not unreasonable, therefore, to expect that discovery of the details surrounding Plaintiff's immediate suspension from the drug court will reveal whether there is any evidence that would support BHN's liability.  *Id.* at 17.  Accordingly, BHN's motion to dismiss Count II is denied.  *See Acevedo-Torres v. Municipality of Arecibo*, 857 F. Supp. 2d 231, 236 (D.P.R. 2012) (acknowledging that plaintiff's claim may not ultimately succeed, but denying the motion to dismiss where it was "plausible that [d]efendant knew or should have known of the harassment").

    C.    Count IV:  Sex Discrimination/Creation of a Hostile Work Environment in Violation of Chapter 151B

In Count IV, Plaintiff alleges that Estes violated Chapter 151B by discriminating against her on the basis of sex and by creating an "intimidating, hostile, humiliating or sexually offensive work environment" which unreasonably interfered with her work performance and that BHN knew or should have known that Estes created a hostile work environment and failed to investigate or take any action to correct it (Dkt. No. 1 ¶¶ 185-190).  BHN's motion to dismiss Count IV is denied for the reasons discussed regarding Plaintiff's Title VII claim.

"The approach taken by the Supreme Judicial Court to 'hostile environment' claims brought under the state statute does not differ greatly from the Supreme Court's analysis." *Brissette*, 235 F. Supp. 2d at 85. Section 4(1) of Chapter 151B makes it unlawful:

> [f]or an employer, by himself or his agent, because of the sex[ ] . . . of any individual . . . to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

Mass. Gen. Laws ch. 151B, § 4(1). "The statute defines discrimination on the basis of sex to include sexual harassment." *Sauer v. Belfor USA Grp., Inc.*, 205 F. Supp. 3d 209, 214 (D. Mass. 2016) (citing Mass. Gen. Laws ch. 151B, § 1(18)). Sexual harassment is defined as:

> sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (a) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions; (b) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment.

Mass. Gen. Laws ch. 151B, § 1(18). *See also* Mass. Gen. Laws ch. 151B, § 4(16A) ("It is unlawful . . . [f]or an employer, personally or through its agents, to sexually harass any employee.").

Similar to Title VII, Chapter 151B imposes liability on an employer for the acts of a co-employee or a non-employee only when the employer "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action." *Sauer*, 205 F. Supp. 3d at 218 (quoting *White v. N.H. Dep't of Corrs.*, 221 F.3d 254, 261 (1st Cir. 2000)). *See Noviello v. City of Boston,* 398 F.3d 76, 95 (1st Cir. 2005) ("When coworkers, rather than supervisors, are responsible for the creation and perpetuation of a hostile work environment, Title VII and chapter 151B seem essentially coterminous as they relate to employer liability."); *Modern Cont'l/Obayashi v. Mass. Comm'n Against Discrimination*, 833 N.E.2d 1139-40 (Mass. 2005) ("[A]n employer may be held liable for failing to respond reasonably to acts of sexual

17

harassment of which it is aware or reasonably should be aware, even though the harassing acts are perpetrated by someone who is not an agent or employee of the employer."). For the reasons previously discussed, the complaint sets forth sufficient facts to raise a reasonable inference that BHN either "knew or should have known about the harassment, yet failed to halt it." *Noviello,* 398 F.3d at 95. Accordingly, BHN's motion to dismiss Count IV is denied.

IV. CONCLUSION

For the foregoing reasons, the court denies BHN's motion to dismiss (Dkt. No. 10). The clerk's office is directed to schedule a Rule 16 initial scheduling conference at the earliest date convenient to counsel and the court.

It is so ordered.

Dated: August 22, 2018 /s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
U.S. MAGISTRATE JUDGE