UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 3:18-cv-10123-KAR

| | |
|---|---|
| TAMMY CAGLE, | ) |
|     Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| JUDGE THOMAS ESTES AND | ) |
| BEHAVIORAL HEALTH NETWORK, | ) |
|     Defendants | ) |

### REPLY BRIEF OF THE DEFENDANT, THOMAS ESTES

NOW COMES the defendant, Thomas Estes (hereinafter "Estes"), and hereby submits this further memorandum of law in support of his Motion for Summary Judgment.

### FACTS

Estes respectfully refers the Court to his Local Rule 56.1 Statement of Material Facts, which is incorporated herein by reference.[1] Briefly, DMH had contracted with the defendant, Behavioral Health Network (hereinafter "BHN") to provide clinician services to several courts of the Massachusetts Trial Court (hereinafter "Trial Court"). The plaintiff, Tammy Cagle (hereinafter "Plaintiff" or "Cagle"), was an employee of BHN and BHN assigned her as the court clinician for the newly established Pittsfield Drug Court. Plaintiff was supervised by two BHN employees and received all compensation from BHN. Estes was a justice of the Trial Court, and was assigned to preside as the judge in the Pittsfield Drug Court. Plaintiff was transferred by BHN in March 2017 due to communication issues with a separate and unrelated entity, the Probation Department. The record is devoid of any admissible evidence that Estes or his

---

[1] Unless otherwise noted, the exhibits and defined terms referenced herein are those identified in and/or attached to the Statement of Material Facts. Citation to Estes' Statement of Material Facts shall be referred to as "SOF at ¶ ___", and citation to Plaintiff's Additional Statement of Material Facts shall be referred to as "ASOF at ¶ ___".

employer, the Trial Court, were consulted or participated in the decision to transfer the Plaintiff to an entity unrelated to the Trial Court.

## PROCEDURAL HISTORY

On August 10, 2020, Estes filed his Motion for Summary Judgment. (Dkt. Nos. 82-84). On October 7, 2020, Plaintiff filed her opposition to Estes' Motion for Summary Judgment. (Dkt. Nos. 99-100). At the hearing on November 23, 2020, the Court provided Estes until December 31, 2020, to file a reply brief. Estes then sought a brief extension to January 7, 2021, which was allowed. (Dkt. No. 111-112). Plaintiff will then have an opportunity to address the arguments raised herein.

## ARGUMENT

Estes has moved for summary judgment as to Plaintiff's sole remaining count against him, which is a claim for Sex Discrimination/Hostile Work Environment in violation of M.G.L. c. 151B. (Dkt. Nos. 1, 35). More specifically, the Complaint alleges that Plaintiff was a female employee at BHN contracted to work as a social worker for the Trial Court under the supervision of then Judge Estes, that Estes discriminated against the Plaintiff based on her sex in that his words and actions created an abusive workplace permeated with discriminatory intimidation and sexually offensive behavior sufficiently severe or pervasive to alter the compensation, terms, conditions or privileges of her employment, and that the Trial Court and BHN are strictly liable for the conduct of their supervisors. (Dkt. No. 1 at ¶¶ 176-179).

Plaintiff, however, has failed, as a matter of law, to show that the Trial Court is her employer under a "joint employer" theory of liability and, regardless, fails to assert a claim against Estes that is cognizable in the Commonwealth. Further, as set forth in the original memorandum of law, c.151B does not allow for individual liability as alleged herein.

645662

## I. THE TRIAL COURT IS NOT A JOINT EMPLOYER OF THE PLAINTIFF

Plaintiff's claim for liability against Estes, although still unclear to Estes, appears to be premised on the status of the Trial Court as a "joint employer" of Cagle. At the outset, the procedural posture of this case renders a defense on the theory alleged virtually impossible. While Estes recognizes that the Court gleaned that this was Cagle's theory, it must be noted that the term "joint employer" is conspicuously absent from the MCAD Charge of Discrimination against the Trial Court, Dkt. No. 84-7, the Complaint before the Court, Dkt. No. 1, the Complaint in State Court against the Trial Court, Dkt. No. 84-8, the Demand sent to the Trial Court, and the Opposition to the Motion for Summary Judgment before this Court, Dkt. No. 99. Plaintiff has not cited a single case which would support the imposition of liability against the Trial Court as a joint employer or Estes as a supervisor particularly under the circumstances this case.

Regardless of the misrepresentation of the facts adduced in discovery, what initially sets this case apart from a typical employment situation is the fact that the Trial Court, as a public institution established under the laws of the Commonwealth, stands in different shoes than all other similarly situated employers. That the Eleventh Amendment prevents an institution such as the Trial Court from being a party to this case alone creates an insurmountable hurdle for Estes, requiring him, in effect, to defend his former employer, who has thus far refused to defend him. Estes cannot bring the Trial Court into this Court to defend the position which, if successful, would defeat the claim against him.

While it is true that one other than a direct employer may be liable to a plaintiff under c. 151B, under such circumstances it is jointly and severally liable for violations under M.G.L.c. 151B. See *Commodore v. Genesis Health Ventures, Inc.*, 63 Mass. App. Ct. 57, 61-63 (2005). Thus, to require Estes to prove that the Trial Court is not a joint employer could, is essence, be to

645662

his detriment. Such gamesmanship should not be sanctioned by this court. If this argument is to be considered, Estes requests that this Court stay this matter pending a decision in the state court.

### A. Estes' Conduct Cannot Be The Basis Of The Determination That The Trial Court Is Plaintiff's Joint Employer.

Estes' alleged conduct, without more, cannot create a joint employer relationship. It is settled law that an employee of a government agency cannot bind the government under a theory of apparent authority or estoppel. *Dagastino v. Comm'r of Corr.*, 52 Mass. App. Ct. 456, 458 (2001). It is black letter law that those who contract with the officers or agents of a governmental agency must, at their peril, see to it that those officers or agents are acting within the scope of their authority." See, e.g., *Bowers v. Bd. of Appeals of Marshfield*, 16 Mass .App. Ct. 29, 34 (1983); *Pavone v. City of Worcester*, 2006 Mass. Super. LEXIS 364, at *9-10 (July 3, 2006) (finding that city manager was not required to honor promises made by police department officials to police candidate, regardless of his reliance on the promises or the unfairness that the circumstances as the lack of authority to speak for the city manager is deemed fatal to the plaintiff's claim).

This Court cited Paragraph 11 of the Complaint as the support for the proffered theory. As apparent authority cannot ground the claim, it cannot proceed. (Dkt. No. 1 at ¶ 11) ("The drug court judge has the apparent authority to choose and retain his drug court team members to insure fidelity to the drug court model in order to further a collaborative and none-adversarial approach in the drug court—in essence he approves the hiring decisions and can make the firing decisions.").

Simply put, Cagle cannot rely on statements or actions Estes, or frankly, any other witness in this case, to ground the claim of joint employment. Cagle has not alleged, and the record is devoid of any evidence of any statements or actions of those with actual authority which could

645662

result in finding the Trial Court to be a joint employer of Cagle. She failed to depose a single witness from the Trial Court and has proffered no evidence that a single witness who testified did so with authority to bind the Trial Court.

### B. The Admissible Evidence Fails To Support The Claim That The Trial Court Is A Joint Employer.

While Estes respectfully suggests that the foregoing argument should end the inquiry as to the status of the Trial Court, to be abundantly cautious, Estes states the admissible evidence proffered would not support the claim as alleged.[2]

"An entity's status as an employer typically hinges on whether it 'has retained for itself sufficient control of the terms and conditions of employment of the employees' in question, and whether it had the right to control and direct the means and manner in which those employees perform services." *Colee Asia v. Res-Care Inc.*, 59 F. Supp. 3d 260, 266 (D. Mass. 2014) (quoting *Thomas O'Connor Constructors, Inc. v. Massachusetts Comm'n Against Discrimination*, 72 Mass. App. Ct. 549, 556 n.8 (2008) (internal citations omitted). "Several factors should be considered in determining whether an entity is a joint employer, such as whether it: 1) supervises the employee's day-to-day activities, 2) has the authority to hire or fire employees, 3) promulgates work rules and conditions of employment, 4) controls work assignments, and 5) issues operating instructions." *Colee Asia*, 59 F. Supp. 3d at 260 (citing *Orell v. UMass Memorial Med. Center, Inc.*, 62-63 (D. Mass. 2002)); *accord Commodore*, 63

---

[2] At the hearing, the Court acknowledged that the vast majority of the ASOF proffered by Plaintiff were inapplicable to Estes and the claim against him. (Dkt. 109 at No. 23-24). Estes has now prepared a response to the ASOF, and notes that many of the allegations are not supported by the referenced material, and/or inadmissible on their face as they rely on emails and documents containing statements of non-parties or persons not deposed. See, e.g., *Jean* v. *United States*, 2002 U.S. Dist. LEXIS 20183, at *11 (D. Mass. Oct. 23, 2002) ("[A] party cannot create a material issue of disputed fact through a self-serving affidavit that conflicts with his deposition testimony without explaining the reason for the discrepancy."); *Quinones* v. *Houser Buick*, 2005 U.S. Dist. LEXIS 14230, at *12 (D. Mass. July 14, 2005) (same); see also *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994) (party attempted to resist summary judgment with affidavit that contradicted deposition testimony).

Mass. App. Ct. at 62 n.5. There is not a scintilla of admissible evidence to support the finding of joint employment when applying the paradigm set forth above.

1. *Estes Did Not Supervise Plaintiff's Day-To-Day Activities*.

The record is replete with evidence that Plaintiff's day to day activities had nothing whatsoever to do with Estes. She independently interacted with members of the Probation Department and other stakeholders absent the direction or knowledge of Estes. (See, e.g., 82, 102, 111-112, 263, 264).

Plaintiff reliance on the Drug Court Protocol and that it identified the district court judge as the leader of the "Team" is inapposite. Plaintiff's own Exhibit 1 confirms that the member of drug court team "may include a program coordinator, assistant district attorney, defense attorney, probation officer(s), clerk, case manager, specialty court clinician, treatment providers, local law enforcement, and representatives from local organizations that provide services to drug court participants." (Dkt. No. 100-1 at 11). These participants render it clear that the Trial Court could not be deemed a joint employer of all of its members. Indeed, such a conclusion is ludicrous considering the obligations of a district attorney or a criminal defense attorney, whose duties and loyalty are to the Commonwealth and the criminal defendant. (*Id.*; ASOF at ¶¶ 16-21). Plaintiff is conflating the roles of the participants in the drug court with some sort of supervision. (Exhibit 100-1).

Setting aside Plaintiff's self-serving assertions and conclusions, her supervisors were BHN employees. (SOF at ¶¶ 18-19, ASOF at ¶¶ 57, 60, 74).

2. *Estes Did Not Have The Authority To Hire Or Fire Plaintiff*.

There is no dispute that Plaintiff never submitted an application to the Trial Court. (SOF at ¶ 10-12, ASOF at ¶¶ 35-39). Plaintiff asserts that Estes had to approve Plaintiff's hiring. The

admissible evidence on the issue, based on testimony of the people with actual knowledge of the process, testified that BHN and DMH made the final decision, and that Estes' inclusion was a courtesy and only a courtesy. (SOF at ¶ 10-21). Moreover, the record is devoid of any evidence that Estes had actual authority to participate in Plaintiff's hiring.

Finally, as this Court acknowledged, see Dkt. No. 109 at 9-10, it is abundantly clear that Estes had no part or control over Plaintiff's removal from the drug court. (SOF at ¶¶ 10-21; see also ASOP at ¶¶ 266-275, 295-296, 306-313). During argument, Plaintiff's counsel acknowledged that the record did not support a finding that Estes had the authority to make the decision, or to even be consulted on it. (Dkt. No. 109 at 17-18).

3. *Estes Did Not Promulgate Work Rules And Conditions Of Plaintiff's Employment*, *Did Not Control Plaintiff's Work Assignments* and *Did Not Issue Operating Instructions*.

Estes' role was that of a judge overseeing a Court session. While the drug court offered a modified process for criminal defendants charges with certain drug offenses, see Dkt. No. 100-1, court was nevertheless a court wherein criminal defendants were prosecuted and defended by attorneys, but were given the opportunity to obtain substance abuse treatment with the assistance of certain providers. (*Id.*). Like court rules, the Drug Court Protocol sought to provide guidance for the potential participants in the program. This form of delayed justice in favor of rehabilitation, however, did not convert the courtroom into a place of employment for all parties to the "team". (SOF at ¶¶ 10-21, ASOF at ¶ 4). There are no facts that Estes' "oversight" of work performed by Plaintiff was anything more than what would be expected of a judge controlling his or her session.

Further, the Trial Court did not contract with BHN for its services. (SOF at ¶¶ 5-8). Rather, BHN – Plaintiff's employer – contracted with DMH. (*Id.*). It should also not be lost on this Court that DMH, while part of the Commonwealth, is a different branch of government than the

Trial Court. DMH falls under the executive branch, while the Trial Court falls under the judicial branch. Plaintiff did not depose witnesses or seek any discovery from the Trial Court in this action, but only deposed a witness from DMH.

As such, this case lacks <u>any</u> of the indicia that is usually required to conclude that a party is a "joint employer."

## II. THERE IS NO CASE LAW APPLYING CHAPTER 151B TO THESE CIRCUMSTANCES.

In order for this Court to attach liability against Estes, the Court must recognize a cause of action that has not been acknowledged by this Court or a Court of the Commonwealth.

There is no case law that a constitutionally appointed judge acting in that capacity results in either the judge or the Trial Court becoming an "employer" as defined by Chapter 151B. Indeed, there is no law – and for good reason – that would allow a plaintiff to import tenets from the doctrine of agency to the relationship of a judge and his or her court. Applying principals of agency, liability passes from the supervisor to the employer because of the supervisor's ability to effect a significant change in an employee's employment status, such as hiring, firing, failing to promote, reassignment with significantly changed responsibilities, or a decision causing a significant change in benefits by an employer. See *Vance v. Ball State University*, 570 U.S. 421, 429 (2012) (describing the agency relationship between the employer and a supervisor as one where the supervisor can take tangible employment action); see also *College-Town, Div. of Interco, Inc.*, 400 Mass. at 165-167 (concluding that Chapter 151B requires vicarious liability for harassment claims based on a supervisor's conduct). The power of a judge to control his or her courtroom is an inherent power based on hundreds of years of jurisprudence. See *First Justice of the Bristol Div. of the Juvenile Court Dep't v. Clerk-Magistrate of the Bristol Div. of the Juvenile Court Dep't*, 438 Mass. 387, 397-398 (2003) (discussing the boundaries of inherent judicial

authority and its power to commit the fiscal resources of the Commonwealth and other governmental agencies necessary to ensure the proper operation of the courts, to make rules governing the internal organization of the courts and to control the practice of law, and to control and supervise personnel within the judicial system). The Supreme Judicial Court has noted that this last power "is perhaps the least controversial and includes a judge's power to 'to control [a court's] own proceedings, the conduct of participants, the actions of officers of the court and the environment of the court.'" *Id.* (quoting *Chief Admin. Justice of the Trial Court v. Labor Relations Comm'n*, 404 Mass. 53, 57 (1989)); *Carrasquillo, Jr. v. Hampden County Dist. Courts*, 484 Mass. 367, 384 (2020) (same and noting that the court has the power to review CPCS's decisions regarding caseload determinations).

To infuse tenets of employment law into this situation, especially as to a judge and the various parties that appear before the Court, is not consistent with the scope and limitations of c. 151B.

### III.   PLAINTIFF'S CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT.

In light of the theory of liability being asserted by Plaintiff, her claim for violation of c. 151B against Estes must be dismissed pursuant to the Eleventh Amendment. The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state.

As interpreted, the Eleventh Amendment bars suit against a state by citizens of that state in federal court. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 47 (1996). It precludes the bringing of a federal claim against a state official based on an allegation that such official violated state law in carrying out his duties. See *Fuller* v. *Board of Selectmen*, 1994 U.S. Dist.

645662

LEXIS 4351, at *7 (D. Mass. Mar. 14, 1994) (finding that a Massachusetts state judge is a state official and therefore entitled to Eleventh Amendment immunity); see also *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 101, (1984); *LaManque, et al. v. Massachusetts Dept. of Employment and Training, et al.*, 3 F. Supp. 2d 83, 93-94 (D. Mass. 1998); see also *Orell*, 203 F. Supp. 2d at 60.

Here, Estes was named in his official capacity only. In fact, he is identified as Judge Estes in the caption. (Dkt. No. 1 at ¶¶ 172-174).

As such, the claim cannot proceed before this Court.

### IV. CHAPTER 151B LIMITS PLAINTIFF'S CLAIMS TO EMPLOYERS, NOT SUPERVISORS.

Plaintiff's Complaint and the sole remaining count against Estes asserts claims consistent with M.G.L. c. 151B, § 4(1) and (16A). (Dkt. No. 1 at ¶¶ 176-179). Further, Plaintiff's Charge in the MCAD also only identified claims pursuant to M.G.L. c. 151B, § 4(1) and (16A). (Dkt. No. 84-7). To the extent that Plaintiff failed to assert other claims, especially since Estes was not a respondent, such claims are barred for the reasons set forth in Section II of Estes' Memorandum of Law. (Dkt. No. 83 at 3-4).

Regardless, the Supreme Judicial Court "has not yet established whether supervisors are subject to liability" under c. 151B, § 4(1), or § 4(16A). *Orell*, 203 F. Supp. 2d at 65. "Under [M.]G.L.c. 151B, 'employer' is defined as any 'employer' with six or more 'persons in his employ.'" *Thomas O'Connor Constructors, Inc.*, 72 Mass. App. Ct. at 562 n.1 (quoting M.G.L.c. 151B, § 4(1)). "Sections 4(1) and 4(16A) of chapter 151B provide the statutory basis for <u>employer</u> liability in cases of sexual harassment." Massachusetts Commission Against Discrimination, Guidelines on 151B: Sexual Harassment in the Workplace (emphasis added).[3]

---

[3] Available at https://www.mass.gov/doc/mcad-guidelines-on-sexual-harassment-laws-in-employment/download.

645662

Section 4(1) provides that "[i]t shall be an unlawful practice … [f]or an employer, by himself or his agent, because of the … sex ... of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment…." M.G.L. c. 151B, § 4(1) (emphasis added). Section 4(16A) provides that it is also an unlawful practice "[f]or an employer, personally or through its agents, to sexually harass any employee…." *Id.* at § 4(16A) (emphasis added). Based on the plain language of these two provisions under Chapter 151B, the SJC has determined that it was the Legislature's intent to make an "employer be liable for discrimination committed by those whom it confers authority" or, in other words, to make employers vicariously liable for the misconduct of their supervisors. See *College-Town, Div. of Interco, Inc.*, 400 Mass. at 165-167 (concluding that Chapter 151B requires vicarious liability for harassment claims based on a supervisor's conduct); *Thomas O'Connor Constructors, Inc.*, 72 Mass. App. Ct. at 564 (same); see also *Commonwealth. v. Gernrich*, 476 Mass. 249, 251 (2017) ("The language of a statute is interpreted in accordance with its plain meaning").

Neither provision, however, creates individual liability for the supervisors. To conclude as much would contradict the plain language of the statute, and also contradict the SJC's own reading of the statutes to assert that the Legislature was creating vicarious liability for employers for the acts of its personnel, and the reasons for doing so. *College-Town, Div. of Interco, Inc.*, 400 Mass. at 165-167. Compare with M.G.L. c. 151B, § 4(4) (creating liability for retaliation as to "any person, employer, labor organization or employment agency"); *id.* at § 4(4A) (creating liability for retaliation as to "any person"); *id.* at § 4(5) (creating liability for aiding and abetting

645662

as to "any person, whether an employer or an employee or not"); further compare with 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful practice for an employer….").[4]

Plaintiff's interpretation would subvert the clear interpretation by the SJC. To that end, Plaintiff will likely cite to a Massachusetts Appeals Court decision, *Beaupre v. Cliff Smith & Associates*, 50 Mass. App. Ct. 480 (2000). *Beaupre*, while a clumsy decision whose precedential value should be limited, simply states that these statutes "allow for personal liability under the theory of aiding and abetting." *Orell*, 203 F. Supp. 2d at 65.

Here, Plaintiff has asserted violations of Sections 4(1) and 4(16A) of c. 151B. These unlawful acts or practices forbid conduct attributable to the employer – either directly or vicariously – and to find otherwise would be an expansion of liability under c. 151B not recognized by the SJC. Other statutes, like the ones identified above, specifically forbid conduct by persons other than the employer. As such, because Estes' alleged conduct does not fall within those categories of unlawful practices or acts forbidden by the statutes asserted by Plaintiff, he cannot be liable for them.

## CONCLUSION

Wherefore, summary judgment should enter in favor of Estes.

---

[4] The Massachusetts statute states that "[i]t shall be an unlawful practice … [f]or an employer, by himself or his agent," and ""[f]or an employer, personally or through its agents…." M.G.L. c. 151B, §§ 4(1), (16A). As noted above, this has been interpreted to require vicarious liability, especially when compared to 42 U.S.C. § 2000e-2(a). Neither statute, however, affords individual liability to a non-employer.

Respectfully submitted,

THE DEFENDANT
JUDGE THOMAS ESTES

Dated: January 7, 2021

By */s/ Nancy Frankel Pelletier*
Nancy Frankel Pelletier, Esq., BBO No. 544402
npelletier@robinsondonovan.com
Direct Fax (413) 452-0342
Jeffrey J. Trapani, Esq., BBO No. 661094
jjt@robinsondonovan.com
Direct Fax (413) 452-0389
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper AND ELECTRONIC copies will be sent to those indicated as non-registered participants** on this 7th day of January, 2021.

*\*\*n/a*

*/s/ Nancy Frankel Pelletier*
Nancy Frankel Pelletier

645662